## H. Duebbe, Jr., *v.* The State.

1. Murder—First Degree.—To constitute murder in the first degree the person killing must be sufficiently self-possessed to comprehend the consequences of his acts; the act of killing must not be the result of sudden, rash, inconsiderate impulse or passion; his design must be either to kill the deceased or to do him some serious bodily injury which results in his death, and the malice must be directed to the person killed. But the law defines no precise time as necessary for deliberation—a moment may suffice as well as a month.

**2. SAME—CHARGE OF THE COURT.**—The district judge charged the jury that "the law regards the killing as done upon express malice if one beats another in a cruel and unusual manner so that he dies therefrom; though he did not intend the death, still such cruel and unusual beating, if death ensues, is pronounced murder upon express malice." *Held,* that, under the facts of this case, the instruction was not error.

APPEAL from the District Court of Austin.   Tried below before the Hon. L. LINDSAY.

This revolting homicide was perpetrated in the county of Austin, on the 11th of October, 1875, by a son upon his aged father.   They lived some six or seven miles apart, and it does not appear that there had been any previous difficulty between them.

Living and cropping with the deceased was his widowed daughter-in-law, who, as a witness for the defense, gave the earliest account of the difficulty which culminated in the homicide.   She stated that, on the morning of the killing, the deceased, who had already been drinking, came from the field to the house and wanted more whisky, when his wife (the mother of appellant) told him he had had enough, and should have no more.   He told her that if she did not give it to him he would break open the chest containing it. He stepped out of the house and got an axe, and was about to break the chest open with it when his wife told him she did not want him to break open her chest, for it was an heir-loom.·   He then seized his wife by the throat, threw her down, and choked her.   Witness saw blood upon her face, and went out and screamed, remaining in the yard until the defendants, Duebbe and Westerfeld, and Schrœder, a state's witness, came up from the field.   The defendants, Duebbe and Westerfeld, entered the back door of the west room, where the wife of deceased then was, and from there passed through to the east room, in which was the deceased. Witness saw defendants, Duebbe and Westerfeld, drag the old man out of the house, and "implored them not to beat

him any more;" and, while they were dragging him out, heard the deceased's wife, who was in a state of excitement, tell them to take him out and kill him. It does not appear by this witness what transpired immediately after the deceased was dragged from the house.

William Schrœder, for the state, testified that he, being in defendant Duebbe's employ, was brought down by him in a wagon, together with Westerfeld and five or six negroes, for the purpose of gathering the crop of the deceased and his widowed daughter-in-law. That on their arrival deceased gave all hands a drink of whisky, and they all went to the field. That witness and defendants, Duebbe and Westerfeld, went to pulling corn. Deceased went with the other hands to where they were gathering cotton, but in a short time he went back to the house. Soon afterwards witness and his companions heard the screams of a woman, and saw the wife and daughter-in-law of deceased standing in the rear of the house, and witness, together with defendants, Duebbe and Westerfeld, went immediately to the house. Witness stopped outside, but the other two went in at the back door of the west room, and passed on into the east room, in which a noise ensued, when witness passed through the west room, and on reaching the front door saw them dragging the old man out of the front door of the east room. They dragged him to and through the draw-bars, about twenty steps in front of the house, and defendant Duebbe took one of the draw-bars, about eight feet in length and the size of a common fence-rail, and struck deceased with it, knocking him down several times, and until he ceased trying to get up, when the defendant dragged him out of the pass-way. Witness was hitching the horses to the wagon near by, and defendant Duebbe came to the wagon, and while there the deceased raised himself up a little and asked the defendant Westerfeld what harm he had done to him that he should so treat

11

him. Westerfeld then took a stick about three feet long, and as large as witness' arm, and struck the deceased several times on his side and back. Then the defendants, Westerfeld and Duebbe, and witness got in the wagon and drove back, in a run, to defendant Duebbe's house, which was some six or seven miles distant.

Within five and six hours thereafter the deceased died of the injuries inflicted on him.

One of the witnesses for the state testified that, while defendant Duebbe was striking his father with the draw-bar, the latter was striking back with a stick like a piece of stove-wood.

It was also in proof that the deceased, when drinking, was quarrelsome and violent in his family, and had sometimes run them off the premises.

In the course of the affray both the appellant and Westerfeld received cuts on their hands, but how they were inflicted is left to conjecture.

The opinion of this court completes the history of the case. After the rendition of the opinion appellant's counsel moved for a rehearing, and supported the motion by an able oral argument, as well as by brief. But the court, after full consideration, overruled the motion.

*A. Chesley*, for the appellant.

1st. The charge of the court below, to the effect that the law *presumes express malice* where one beats another in a cruel manner so that he died therefrom, is not in the abstract a sound proposition of law, and can only be true when the beating is done without reasonable provocation, or justifying or extenuating cause.

2d. Where there are circumstances attending the case from which a jury might infer an inflamed or excited condition of the mind, upon the part of the accused, at the time of the beating, showing the absence of coolness and

deliberation, and where in addition there is disclosed a justifying, or even extenuating, cause for such inflamed condition of the mind, there the presumption of express malice is repelled.

3d. Where there are *any* circumstances tending to show such inflamed condition of the mind at the time of the beating, accompanied by any circumstances tending to show an adequate or extenuating cause therefor, then, it is submitted, the jury should have an opportunity of weighing these circumstances, and determining whether or not, as a matter of fact, express malice existed.

Thus, if the mind of the accused at the time of the beating is enraged by personal indignities to himself or near relations, such as are calculated to arouse anger in an ordinary mind, although the beating was cruel, and resulted in death, yet it is submitted the death would, as a matter of law, be attributable to anger, and not to express malice.

4th. Under the charge of the court below, if the jury believed from the evidence that the beating was cruel and resulted in death, they had *no discretion* as to the character of their finding, but were virtually instructed to find the defendant guilty of murder upon express malice ; for they are told, as a matter of law, that such beating, resulting in death, *is* express malice, and they were precluded from repelling this presumption from any circumstances in the case that might tend to show rage, anger, or excitement arising from an adequate or extenuating cause ; and it is submitted that if the beating was done in anger, arising from " adequate cause," the offense was manslaughter ; and if the anger actually existed, so as to prevent cool reflection, although there was no " adequate cause " therefor, there was only implied malice, and the offense was murder in the second degree.

The question is, does the record disclose *any* circumstances *tending to show* the existence of rage or anger in the

mind of the accused, at the time of the beating, which pre-
vented him from reflecting upon the probable consequences
of his acts; if so, then the question should have been left
to the jury as to whether such rage or anger actually
existed, and, if so, whether it arose from an adequate cause.

*H. H. Boone*, Attorney General, for the State.

Ector, Presiding Judge.    Henry Duebbe, jr. (the appel-
lant), Christian Westerfeld, and Louisa Duebbe were
indicted, in the district court of Austin county, for the mur-
der of Heinrich Duebbe, sr.    The defendant Henry
Duebbe, jr., was found guilty of murder in the first degree,
and his punishment assessed at death; Christian Wester-
feld was found guilty of murder in the second degree, and
his punishment assessed at fifteen years in the penitentiary;
and the other defendant, Louisa Duebbe, was found not
guilty.    The defendant Henry Duebbe filed a motion for
a new trial, which was overruled; he then gave notice of
an appeal, in open court, to the supreme court, and the
case was sent from the supreme court to this court.

The defendant has made the following assignment of
errors:

"1st. The court erred in overruling defendant's motion
for new trial.

"2d. The district judge erred in that part of his charge
to the jury wherein he instructed the jury that 'the law
regards the killing as done upon express malice if one
beats another in a cruel or an unusual manner so that he
dies therefrom; though he did not intend the death, still
such cruel and unusual beating, if death ensues, is pro-
nounced murder upon express malice.'

"3d. And for other errors in the charge of the court
on the subject of express and implied malice."

The question for us to decide in this case is whether or

not the killing was with express malice. Our Code provides that "all murder committed by poison, starving, torture, or with express malice, or committed in the perpetration, or in the attempt at perpetration, of arson, rape, robbery, or burglary, is murder in the first degree; and all murder not of the first degree is murder of the second degree." "Express malice exists where one person kills another with a sedate and deliberate mind and formed design. Such formed design may be evidenced by external circumstances discovering that inward intention, as lying in wait, antecedent menaces, former grudges, and concerted schemes to do the party some bodily harm." 4 Bl. Com. 198.

This description indicates, 1st, the state of the mind at the time of the killing; 2d, the design formed; and, 3d, the character of proof by which such formed design is to be discovered.

The person must be of a sedate and deliberate mind. He must be self-possessed sufficiently to comprehend and contemplate the consequences of his acts. His acts must not be the result of a sudden, rash, inconsiderate impulse or passion.

The design must be to kill the deceased, or to do him some serious bodily injury which resulted in his death; and the malice must be directed to the person actually killed.

Hawkins says "that is most properly called express malice when murder is occasioned through an express purpose to do some personal injury to him who is slain in particular." 1 Hawk. P. C. 96.

This design is not confined to an intention to take away the life of the deceased, but includes an intent to do any unlawful injury which may probably end in depriving the party of his life. *McCoy* v. *The State*, 25 Texas, 39; Roscoe, 707; 2 Starkie, 711.

Malice is implied from any deliberate, cruel act committed

by one person against another, however sudden—as where a man kills suddenly without any, or without a considerable, provocation, and with a deadly weapon—it being a maxim, based on ordinary experience, that no person, unless under the influence of malice, would be guilty of such an act upon a slight, or no apparent, cause. If the defendant designed to kill the deceased, or to inflict upon him, by any unlawful means, any serious bodily injury which might probably end in his death, the law does not and cannot define any precise time as necessary for deliberation. The operation of the mind in deliberating may take place in the shortest interval—even the moment before the act, as well as months before—and the deliberate intention of the mind is manifested by external circumstances.

Justice Moore, in his able opinion in the case of *Farrer* v. *The State*, 42 Texas, 271, uses the following language: "For the design must originate in, or result from, a sedate, deliberate mind. These words, indicating the state of the mind when the design is formed, are not, however, to be understood in an absolute and unconditional sense; for it would be almost impossible that any one, not altogether devoid of human sensibilities and reduced to the level of the brute, could deliberately design to take the life of a fellow-being with an absolutely calm and unruffled mind, without any character of mental excitement whatever. Still, they certainly import that the mind is sufficiently composed, calm, and undisturbed to admit of reflection and consideration on the design; that it is in a condition to comprehend and understand the nature and character of the act designed, and its probable consequences and results. The act must not result from a mere sudden, rash, and immediate design, springing from an inconsiderate impulse, passion, or excitement, however unjustifiable and unwarranted it may be, for in such case the sedate, deliberate mind is wanting, and without it there can be no express malice." The killing

may be with express malice, though there was no intention to take the life of the deceased.

When a homicide is committed, antecedent menaces, former grudges, deliberate compassings, and the facts and circumstances attending the killing are important, as being facts from which the actual state of the mind may be inferred at the time of the killing. These external circumstances attending the killing may transpire at the time of the killing as well as before that time. A killing may be upon a sudden difficulty, and yet it may be attended with such circumstances of enormity, cruelty, deliberate malignity, and cool, calculating compassings as will be sufficient evidence to show that it was done with express malice. Familiar cases are given in illustration, as " where a boy was tied to a horse's tail and dragged till he was killed ; where a master corrects his servant with an iron bar ; where a schoolmaster stamps on his scholar's belly." 4 Bl. Com. 199. Antecedent circumstances, and those that are contemporaneous with the killing, may conspire to lend to each other increased force in establishing this inference. *Hill* v. *The Commonwealth*, 2 Gratt. (Va.) 603. Acts and omissions, or other language of the prisoner, even after the mortal stroke or killing, may often be pertinent evidence, as tending to show express malice at the time of the killing. *The Commonwealth* v. *Jones*, 1 Leigh. (Va.) 670. In determining whether or not a homicide is murder in the first or second degree, we cite also the following authority : " The distinction in a case is often slight ; and when a statutory line is to be followed it has been held that, when the damage intended was such as would probably result in death, it is murder in the first degree, even though death may have been but incidental to the offender's purpose. In all cases of such outrageous hurt as to make death a natural consequence, we have a right to infer such an intent ; but it is otherwise where

the hurt was less serious and the presumption to kill less violent." Whart. on Hom. 40.

Keeping in view these legal propositions, the jury, in our opinion, in applying the evidence to the law as given in charge by the court, were fully warranted in finding the appellant guilty of murder in the first degree. The evidences of express malice are not wanting in the immediate circumstances attending the homicide. The evidence in the record shows a reckless, unprovoked slaying of an aged father by the son, the latter egged on by an inhuman mother and wife. The instrument used, the manner of the murder, all point with unerring certainty to a design to kill or do serious bodily injury, formed most probably as the old man was being dragged from his own house by his son.

In this case the appellant had the full benefit of a charge on murder in the second degree and manslaughter. And by taking the whole charge together, and applying the facts in evidence to it, we believe the law of the case was fairly presented by the court to the jury, and that the second assignment of errors made by the appellant to the charge of the court is not well taken.

The judgment of the court below is, therefore, affirmed. *Affirmed.*